UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JEFFREY H. MCELWAIN,
    Plaintiff,

v.                                      Case No.: 3:23cv22026/MCR/ZCB

ESCAMBIA COUNTY, et al.,
    Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a *pro se* prisoner civil rights action under 42 U.S.C. § 1983. Presently before the Court is Plaintiff's second amended complaint. (Doc. 13). The Court is statutorily required to screen the pleading to determine whether it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune. *See* 28 U.S.C. § 1915A (governing civil actions in which a prisoner seeks redress from a governmental entity or an officer or employee thereof); *see also Jones v. Bock*, 549 U.S. 199, 202 (2007) (recognizing that Congress has mandated "early judicial screening of prisoner complaints"). Having reviewed the second amended complaint, the Court believes Plaintiff's claims against Defendants should be

dismissed for failure to state a claim upon which relief can be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).[1]

## I.   Background

When Plaintiff filed this complaint, he was a pretrial detainee at the Escambia County Jail. (*See* Doc. 13 at 6). Plaintiff names six Defendants in this action: (1) the Escambia County Sheriff's Department, (2) APRN M.D., (3) APRN A.R., (4) RN C.J. Riley, (5) APRN W.K., and (6) RN-HSM C. Gardner. (Doc. 13 at 3-6). He has sued them all in their official capacities. (*Id.*).

Plaintiff alleges that he underwent "an extensive surgery to his right shoulder and right upper bicep" about a month before his imprisonment at the Escambia County Jail. (*Id.* at 7). Before he was arrested, he was under a doctor's care, attending doctor appointments, and physical therapy sessions twice a week. (*Id.*). Upon arrival at the

---

[1] Plaintiff was provided with an opportunity to amend his complaint when a prior version was found deficient. (Doc. 8). The Court pointed out deficiencies in Plaintiff's complaint and instructed him to correct them in an amended complaint. (*Id.*). Although Plaintiff has filed an amended complaint, he has still failed to plausibly allege claims against Defendants. Thus, dismissal of Plaintiff's complaint is warranted. *See generally Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (stating that "[o]rdinarily, a party must be given at least one opportunity to amend before the district court dismisses the complaint").

2

Escambia County Jail, Plaintiff provided officials with his medical records containing information about his shoulder surgery and recovery. (*Id.*). He claims Defendants "conspired in deliberate indifference to the mandated and prescribed post-operative therapies/treatment the [he] need[ed] to receive for a full recovery." (*Id.* at 8).

Plaintiff alleges the Escambia County Sheriff's Office "conspire[d] to ignore the obvious and serious needs of the plaintiff to receive" the treatment and therapies prescribed by his surgeon. (*Id.* at 8). As for Defendant, APRN M.D., Plaintiff alleges that this Defendant "delayed and/or blocked" his access to prescribed treatment. (*Id.* at 9). It appears from Plaintiff's allegations that APRN M.D. saw Plaintiff during a sick call request and noted the date of Plaintiff's surgery and his limited range of motion. Defendant M.D., however, did not prescribe any new treatment and only noted that recommendations for physical therapy were previously discussed. (*Id.*). As for Defendant APRN A.R., Plaintiff alleges this Defendant mistreated him by neither filling a Meloxicam prescription nor conducting an X-ray. (*Id.* at 10). As for Defendant RN C.J., Plaintiff alleges this Defendant mistreated him by being aware of Plaintiff's medical records from the surgery, his shoulder pain, and the

prescribed treatment by Plaintiff's surgeon, but not providing him with further care. (*Id.* at 10-11). Instead, Plaintiff alleges Defendant Riley merely noted during Plaintiff's sick call that Plaintiff was "instructed by the practitioner on shoulder exercises" and that Plaintiff was "on Meloxicam daily." (*Id.* at 11). As for Defendant APRN W.K., Plaintiff alleges that this Defendant mistreated him by prescribing Plaintiff ibuprofen twice a day for five days. (*Id.* at 11-12). Defendant W.K. also told Plaintiff to try several exercises and provided a sheet of examples. (*Id.* at 12). Plaintiff further alleges Defendant W.K. mistreated him when Defendant W.K. saw Plaintiff two weeks later and wrote "no new orders." (*Id.*). As for Defendant RN HSM C. Gardner, Plaintiff alleges this Defendant reviewed three grievances where Plaintiff complained about receiving inadequate treatment. (*Id.* at 13). Defendant Gardner denied all three of Plaintiff's grievances, writing "after an in-depth review your claim is without merit and therefore denied." (*Id.*).

Plaintiff brings claims under the Eighth and Fourteenth Amendment. (*Id.* at 15). He seeks monetary damages. (*Id.* at 16).

4

## II.     Statutory Screening Standard

To survive dismissal at the screening phase, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The plausibility standard is met only where the facts alleged enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (internal quotation marks omitted). And "bare assertions" that "amount to nothing more than a formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed

5

true." *Id.* at 681 (internal quotation marks omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

### III.   Discussion

**A. The Escambia County Sheriff's Office is not a proper Defendant.**

Plaintiff names the Escambia County Sheriff's Office as a Defendant. The capacity to be sued in federal court is governed by the law of the state in which the district court is located. *See Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) (citing Fed. R. Civ. P. 17(b)). Under Florida law, there are constitutionally created political subdivisions called counties and separately created constitutional officers. *See* Fla. Const. Art. VIII, §§ 1(a) and (d). Florida does not provide, either constitutionally or statutorily, for a sheriff's office to be treated as a separate legal entity, an agency of the county, or a corporate entity. Therefore, the Escambia County Sheriff's Office is not an entity subject to suit under § 1983. *See, e.g., Faulkner v. Monroe Cnty. Sheriff's Dep't*, 523 F. App'x 696, 701 (11th Cir. 2013) (affirming dismissal of § 1983 claims against the Monroe County Sheriff's Office, noting "Florida law has not established sheriff's offices as separate legal entities with the

6

capacity to be sued"); *Eddy v. City of Miami*, 715 F. Supp. 1553, 1556 (S.D. Fla. 1999) (indicating that a department which is an integral part of a local government's policing function is not an entity subject to suit under § 1983). Accordingly, Plaintiff's claim against the Escambia County Sheriff's Office should be dismissed.

**B. Plaintiff fails to state a plausible claim against the medical Defendants in their official capacities.**

Plaintiff has brought official capacity claims against numerous medical providers who treat inmates at the Escambia County Jail. (Doc. 13 at 3-5). Plaintiff's official capacity claims are treated as claims against the entity that employs the medical Defendants. *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (explaining that official capacity "suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents"). Regardless of whether the entity that employs the medical providers is Escambia County or a third party medical service that has a contract with the county, Plaintiff has failed to state a § 1983 claim against the medical Defendants in their official capacities. *See Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997) (explaining that a "private entity" that "contracts with a county to provide medical services to inmates, performs a function

7

traditionally within the exclusive prerogative of the state" and, therefore, is treated the same as a county for § 1983 purposes).

To impose § 1983 liability against the medical Defendants in their official capacities, Plaintiff must show that a policy or custom of the municipal entity or its contract provider was the "moving force" behind the alleged constitutional deprivation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Plaintiff, however, has not alleged that the county or its contract medical provider has a custom or policy that caused a violation of his constitutional rights. Indeed, nowhere in the complaint does Plaintiff mention a custom or policy. Because Plaintiff fails to identify a custom or policy that led to the violation of his constitutional rights, Plaintiff's official capacity deliberate indifference claims against the medical Defendants should be dismissed.

### C. Plaintiff fails to state a deliberate indifference claim against any Defendant.

To the extent Plaintiff has asserted individual capacity claims against the medical Defendants, dismissal of Plaintiff's second amended complaint would be warranted because it fails to plausibly allege a deliberate indifference claim against any Defendant. Because Plaintiff was a pre-trial detainee at the Escambia County Jail, his Eighth

Amendment deliberate indifference claims are reviewed under the Fourteenth Amendment Due Process Clause. *See Jacoby v. Baldwin Cnty.*, 835 F.3d 1338, 1344 (11th Cir. 2016). "However, the deliberate indifference analysis is the same under either amendment." *Duff v. Steub*, 378 F. App'x 868, 871 (11th Cir. 2010).

Under the deliberate indifference standard, prison officials are obligated to provide prisoners with "minimally adequate medical care." *Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991). Indeed, "[w]ith respect to prisoners' medical care…the Eighth Amendment doesn't require it to be perfect, the best obtainable, or even very good." *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020) (cleaned up). To allege a deliberate indifference claim, a plaintiff must first show an "objectively serious medical need." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020) (cleaned up). A medical need is objectively serious if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention—that, if left unattended, poses a substantial risk of serious harm." *Id.* (cleaned up). Second, a plaintiff must plausibly allege that prison officials (1) "had subjective

9

knowledge of a risk of serious harm and (2) that they disregarded that risk (3) by conduct that was more than mere negligence." *Id.* (cleaned up). The plaintiff's burden of establishing the objective and subjective prongs is "steep." *Id.*

Here, Plaintiff's complaint fails with respect to the subjective element of a deliberate indifference claim. More specifically, he has not plausibly alleged that Defendants disregarded a risk of serious harm by conduct that was more than mere negligence. At its core, Plaintiff's deliberate indifference claim is premised on a disagreement regarding the treatment necessary for Plaintiff's surgically repaired shoulder. Plaintiff thinks he should have received a certain type of treatment, and Defendants did not find that treatment to be medically necessary.

The law in the Eleventh Circuit is clear, however, that a "difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment" does not establish deliberate indifference. *Harris*, 941 F.2d at 1505; *see also Cameron v. Allen*, No. 2:10-CV-00842, 2013 WL 5441774, at *11 (M.D. Ala. Sept. 27, 2013) (holding that a medical provider's decision not to order an orthopedic evaluation of the inmate's shoulder was a mere difference in

medical opinion that did not give rise to a deliberate indifference claim); *Mackler v. Chapman*, No. 1:11cv45, 2011 WL 9521094, at *5 (M.D. Ga. May 11, 2011) (finding no deliberate indifference where the inmate "prefer[red] to have surgery on his shoulder" but the physician disagreed with that course of action); *Faheem v. Gaminara*, No. 11-80122, 2012 WL 12950514, at *10 (S.D. Fla. Apr. 10, 2012) (granting summary judgment when the inmate believed he was entitled to a medical treatment that was different than what he received). The law is also clear that a medical practitioner does not act with deliberate indifference simply because he or she fails to follow treatment recommendations previously issued by another medical practitioner. *See Bismark v. Fisher*, 213 F. App'x 892, 897 (11th Cir. 2007) ("Nothing in our caselaw would derive a constitutional deprivation from a prison physician's failure to subordinate his own professional judgment to that of another doctor; to the contrary, it is well established that a simple difference in medical opinion does not constitute deliberate indifference.").

Additionally, Plaintiff has alleged that Defendants made "medical judgments…that fall below medical standards." (Doc. 13 at 9). Accepting that allegation as true, it is still insufficient to satisfy the deliberate

11

indifference standard. That is so because the "deliberate indifference standard is much higher than simple negligence or medical malpractice." *Culver v. Sanders*, 608 F. Supp. 3d 1171, 1179 (N.D. Fla. 2022); *see also Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) (recognizing that "medical malpractice…does not constitute deliberate indifference"). Instead, what deliberate indifference requires is medical treatment that "is so grossly incompetent, inadequate or excessive as to shock the conscience." *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020). Plaintiff's allegations fall short of meeting that high standard. Thus, dismissal is warranted.

## IV. Conclusion

For the reasons above, it is respectfully **RECOMMENDED** that:

1. Plaintiff's second amended complaint (Doc. 13) be **DISMISSED** for failure to state a claim upon which relief can be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

2. The Clerk of Court be directed to close this case.

At Pensacola, Florida this 24th day of January 2024.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

## Notice to the Parties

Objections must be filed within fourteen days of the date of the Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control</u>.  An objecting party must serve a copy of the objections on all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.